IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARY CAMPION,

                Plaintiff,

v.

ANDREW SAUL, Commissioner of
Social Security,

                Defendant.

OPINION AND ORDER

18-cv-112-wmc

This is an appeal from an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Mary Campion challenges the Commissioner's determination that, but for the period between July 1, 2004, and August 31, 2005, she was not disabled and therefore not entitled to disability insurance benefits under Title II of the Social Security Act. Campion's appeal raises a single claim: that the administrative law judge erred by failing to translate her finding that Campion had mild-to-moderate limitations in concentrating, persisting, or maintaining pace into a reasoned, supported mental residual functional capacity finding. For the reasons set forth below, the court rejects this argument and will affirm the Commissioner's decision.

BACKGROUND[1]

Campion's claim has followed a tortuous path. Campion applied for disability insurance benefits in February 2010, alleging that she had been disabled since July 1, 2004, at which time she was 49 years old. Campion's eligibility for disability insurance benefits

---

[1] These facts are drawn from the Administrative Record ("AR") (dkt. #10), and focus primarily on plaintiff's mental impairments.

had expired on September 30, 2006, however, which meant that Campion had to show that she was disabled on or before that date.

Campion alleged that between July 1, 2004, and September 30, 2006, she was unable to sustain a fulltime job because of back problems, radiation enteritis, bowel obstruction, anxiety and depression. After two agency denials, Campion's claim was heard by an administrative law judge ("ALJ"), who found that Campion was not disabled; the Appeals Council subsequently denied Campion's request for review. Campion then appealed to this court. In December 2014, pursuant to a joint motion by the parties, this court remanded the case to the agency for further review.

The case was assigned on remand to a new ALJ, who held a hearing in December 2015. The ALJ heard testimony from Campion, a vocational expert, and Dr. Mary Stevens, Ph.D., an impartial psychological expert. As relevant here, Dr. Stevens testified that, during the relevant timeframe, Campion had: mild restrictions in her activities of daily living; moderate difficulties with social functioning; and moderate difficulties maintaining concentration, persistence, or pace.[2] (AR 2343.) Dr. Stevens further offered the opinion that, in spite of these limitations, Campion would have been able to perform, on a full time

---

[2] The SSA requires adjudicators to use a "special technique," or "psychiatric review technique" to decide whether a claimant has a severe mental impairment that either meets or equals the severity of one of the listed impairments or, if not, is nevertheless severe and requires further evaluation. 20 C.F.R. § 404.1520a(d). The four categories of functioning addressed by Dr. Stevens are known as the "paragraph B" criteria of the adult mental disorders listings and are rated on a five-point scale ranging from "none" to "extreme." *Id*. In general, a claimant must have two "marked" limitations or one "extreme" limitation to meet a listing. If the claimant's degree of limitation in the four functional areas is rated as "none" or "mild," then the agency will find the claimant does not have a severe impairment. For cases in between, *i.e.*, the individual's mental impairment is severe but does not meet or equal a listed impairment, the adjudicator must proceed to assess the claimant's mental residual functional capacity.

2

basis, repetitive work duties involving brief and superficial contact with others. (AR 2344.)

On January 13, 2016, the ALJ issued a decision again finding plaintiff not disabled. Campion again appealed to this court and again, this court remanded the case to the agency pursuant to a joint motion by the parties.

On remand, the case was assigned to ALJ Virginia Kuhn, who held a third hearing on October 16, 2017. ALJ Kuhn heard testimony from Dr. Karen Butler, Ph.D., who testified as a psychological expert about Campion's mental impairments. In contrast to Dr. Stevens, Dr. Butler testified that Campion's mental impairments were *not* severe during the relevant time period. Butler recognized that plaintiff had anxiety, but found it to be well-controlled with medication. (AR 2250.) According to Dr. Butler, Campion's limitations in the four areas of functioning (the "paragraph B" criteria) were "none or mild at most."[3] (AR 2251.)

On December 18, 2017, ALJ Kuhn issued a partially favorable decision, finding that Campion had been disabled for the period between July 1, 2004 (her alleged disability onset date) and August 31, 2005, as a result of physical complications related to her treatment for endometrial cancer. (AR 2185-2207.) ALJ Kuhn determined, however, that Campion's condition had improved, such that by September 1, 2005, she had the functional ability to perform jobs available in significant numbers in the national economy. In reaching her conclusions, the ALJ evaluated the evidence related to Campion's mental impairments during the relevant time period, and expressly considered the opinions of Dr.

---

[3] Effective March 27, 2017, the agency revised the four broad functional areas relevant to assessing mental impairments. However, the category at issue in this case, "concentrate, persist, or maintain pace," stayed essentially the same.

3

Butler and Dr. Stevens. Rating Campion's limitations in the four broad areas of functioning, the ALJ "combined" the opinions of Dr. Stevens and Dr. Butler and found that Campion had a "mild to moderate" limitation in the area of concentrating, persisting, or maintaining pace. The ALJ further found that Campion had the following mental residual functional capacity:

> she could perform simple, routine, repetitive tasks;
>
> she could perform work where instructions were fixed and predictable from day to day and would align with a Specific Vocational Preparation of 1 or 2 as defined by the *Dictionary of Occupational Titles*;
>
> the work should require at most occasional, brief, and superficial contact with others; and
>
> the work should not require collaboration or teamwork.

The ALJ explained that in arriving at her mental RFC assessment, she had given great weight to Dr. Stevens' conclusion at the second administrative hearing that Campion had the mental capacity to work full time provided the work was repetitive and involved only brief and superficial contact with others. (AR 2202.) The ALJ found Dr. Stevens' conclusions to be

> fully consistent with the substantial evidence; including the overall clinical findings and signs of mental illness; mental status examinations which indicated few abnormalities; the claimant's conservative, yet successful outpatient medication regimen consisting only of Xanax; the lack of specialized mental therapy, psychiatric hospitalization, or emergency mental health treatments; and the claimant's very high level of independence and broad range of activities.

(*Id*.) The ALJ further found that Dr. Stevens' conclusions were largely consistent with those of James Alsdurf, Ph.D., an agency consulting psychologist who reviewed Campion's

4

medical records in April 2010. From his review, Alsdurf concluded that, although Campion had "moderate" difficulties maintaining concentration, persistence, or pace, she had the ability during the relevant time period to concentrate, persist, and maintain adequate pace for jobs requiring the performance of routine, repetitive tasks involving at most three- to four-step, uncomplicated instructions. Dr. Alsdurf further found that Campion's ability to interact and get along with co-workers was moderately limited, but adequate for brief and superficial contacts, and that she was able to follow an ordinary routine with the ordinary level of supervision found in most work settings. The ALJ found that, like Dr. Stevens' conclusions, Dr. Alsdurf's narrative residual functional capacity assessment was consistent with the substantial evidence in the record and entitled to some weight. (AR 2203.)

At the administrative hearing, a vocational expert testified that an individual of Campion's age, education, and work history with the mental residual functional capacity found by the ALJ (and who could perform work at the light exertional level with other postural limitations not relevant to this case) could not perform Campion's past relevant work but could perform thousands of other jobs in the national economy, including that of cleaner/housekeeper, inspector/hand packager, and routing clerk. (AR 2258-59.) Based on this testimony, the ALJ concluded that Campion was not disabled from September 1, 2005, through her date last insured, because she was capable of making a successful adjustment to other work existing in significant numbers in the national economy.

OPINION

As noted previously, plaintiff raises only a single challenge to the ALJ's decision: that her RFC and corresponding hypothetical question to the vocational expert on which her finding of "not disabled" rested "did not adequately encapsulate moderate limitations in concentration, persistence or pace," or CPP. (Pl.'s Br. (dkt. #12) 22.) Plaintiff's argument is based on the Seventh Circuit's repeated admonition that limiting a claimant to "simple" or "routine" tasks does not address general CPP deficiencies:

> Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations. We have also made clear that in most cases "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace," and thus, alone, are insufficient to present the claimant's limitations in this area.

*Winsted v. Berryhill*, 923 F.3d 472, 476–77 (7th Cir. 2019) (internal citations omitted).

Plaintiff argues that, as in these cases, the ALJ's hypothetical was defective because it limited plaintiff to "simple, routine, repetitive tasks." Further, she argues, the additional limitation that instructions be fixed and predictable from day to day and would align with a Specific Vocational Preparation of 1 or 2 as defined by the *Dictionary of Occupational Titles* was merely a finding that plaintiff could perform unskilled work, a limitation that the Seventh Circuit has also found to be inadequate to encompass moderate CPP limitations. *Compare* O'Net Online, Specific Vocational Preparation (SVP), https://www.onetonline.org/help/onlinesvp (last visited July 10, 2019) (explaining that SVP 1 corresponds to a job that can be learned with "short demonstration only" and SVP

6

2 corresponds to a job that can be learned with "anything beyond short demonstration up to and including 1 month."), *with* 20 C.F.R. §§ 404.1568(a) (defining unskilled work as work needing little or no judgment to do simple duties that can be learned on the job in a short period of time). *See also Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008) (restricting claimant to unskilled, simple work did not account for his difficulty with memory, concentration, and mood swings). Finally, argues plaintiff, the limitations on interactions with others address her social functioning and adaptation, rather than CPP. *See Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015)("'Few if any work place changes' with limited 'interaction with coworkers or supervisors' deals largely with workplace adaptation, rather than concentration, pace, or persistence.").

In response, the Commissioner argues initially that the line of cases on which plaintiff relies applies only where the claimant has at least "moderate" limitations in CPP, whereas here, the ALJ found plaintiff to have only *mild-to-moderate* limitations in CPP.[4] It is true that the vast majority of the Seventh Circuit's cases have involved moderate or greater limitations. *See, e.g., Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (hypothetical did not account explicitly for Moreno's "moderate limitations" in CPP); *Varga*, 794 F.3d at 814 ("Dr. Rattan's assessment of Varga's mental RFC for the state agency noted moderate difficulties in seven areas related to concentration, persistence, and

---

[4] With its recent changes to the listings for mental impairments, the agency took the opportunity to clarify the meanings of the terms "mild" and "moderate." A "mild" limitation means that the claimant's ability to function in that particular area "independently, appropriately, effectively, and on a sustained basis is slightly limited." Revised Med. Criteria for Evaluation Mental Disorders, 81 Fed. Reg. 66138, 66164 (S.S.A. Sept. 26, 2016) (effective Jan. 17, 2017). A "moderate" limitation means that the claimant's functioning in this area "independently, appropriately, effectively, and on a sustained basis is fair." *Id*.

pace"); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (claimant had "at least moderate limitations" in CPP); *Stewart v. Astrue*, 561 F.3d 679, 682 (7th Cir. 2009) (moderate limitations); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003) (hypothetical did not account for ALJ's finding that claimant had "frequent" deficiencies of CPP). However, "[w]hen determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment[.]" *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). Applying this general rule, several courts in this circuit have found that an ALJ's unexplained failure to include even mild limitations in CPP may warrant remand. *See, e.g., Hovi v. Colvin*, No. 12-C-169, 2013 WL 3989232, at *16 (W.D. Wis. Aug. 2, 2013) (Adelman, J.); *Underwood v. Colvin*, No. 2:11–CV–354, 2013 WL 2420874, at *2 (N.D. Ind. May 30, 2013); *Dross–Swart v. Astrue*, 872 F. Supp. 2d 780, 795 (N.D. Ind. 2012); *Baker v. Astrue*, No. 4:10–CV–00066, 2011 WL 3585613, at *5–6 (S.D. Ind. Aug. 15, 2011); *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933–34 (N.D. Ill. 2011).

Nevertheless, here it is unnecessary to answer this question because the ALJ's hypothetical plainly *did* account for the impact of plaintiff's CPP limitations on her ability to work. As plaintiff acknowledges, there is no requirement that the ALJ use the specific CPP terminology in crafting the RFC or in hypotheticals. *O'Connor-Spinner*, 627 F.3d at 619. When it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform," remand is not required. *Id*. at 619-20.

Such is the case here. As noted above, the ALJ adopted the conclusions of Dr.

8

Stevens and Dr. Alsdurf, both of whom offered a specific opinion of the kinds of work plaintiff could perform in spite of her moderate limitations in CPP. The ALJ's hypothetical tracked these restrictions almost verbatim; if anything, it was *more* restrictive.

As the Commissioner notes, the Seventh Circuit has held that the ALJ does not err in relying on a medical source opinion that translates moderate limitations in concentration, persistence, or pace into specific functional limitations, so long as the ALJ reasonably credits that opinion. *See Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015) (holding that ALJ adequately accommodated CPP limitation where ALJ adopted RFC limitations consistent with state agency doctor's narrative opinion; RFC limitation similarly restricted claimant to "simple, routine tasks and limited interactions with others" to account for CPP limitation caused by anxiety); *Varga*, 794 F.3d at 816 ("[I]n some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations."); *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (holding that the ALJ reasonably relied upon a medical expert's RFC determination in formulating hypothetical to VE). *See also Ford v. Berryhill*, No. 17-cv-544 (W.D. Wis. June 4, 2019) (Op. & Ord. (dkt. #13) 19) (upholding ALJ's decision where plaintiff conceded that, in formulating the RFC, the ALJ reasonably relied on the opinions of a medical expert who provided testimony during the hearing and an examining doctor who found that plaintiff "could perform unskilled work with brief social contact in a low-stress environment"). Here, the ALJ reasonably determined that Dr. Stevens' and Dr. Alsdurf's RFC assessments adequately captured plaintiff's limitations in CPP. As the ALJ noted, plaintiff's mental health treatment during

the relevant time frame consisted only of an outpatient regimen of anti-anxiety medication (Xanax), mental status examinations were largely normal, and plaintiff was able to engage in a variety of activities requiring concentration, persistence and pace, including operating a motor vehicle, managing her personal finances, participating in Bible study groups, shopping for groceries, volunteering at a jail, and playing cards. Indeed, Dr. Butler did not think plaintiff had a severe mental impairment at all.

Given this relatively meager evidence of mental limitations, the ALJ more than accommodated for plaintiff's limitations in CPP when she adopted the narrative RFC assessments offered by Dr. Stevens and Dr. Alsdurf. Tellingly, plaintiff does not claim that the medical experts ignored any significant evidence when they formulated her RFC, she does not challenge the weight the ALJ gave to these opinions, and she does not point to evidence in the record that shows she has greater limitations than found by the ALJ. She merely argues that phrases like "simple, routine and repetitive" can never account for limitations in CPP. That is not the law in this circuit. Accordingly, for the reasons just discussed, the decision of the Commissioner will be affirmed.

ORDER

IT IS ORDERED that the decision of the Commissioner of Social Security denying plaintiff Mary Campion's application for Disability Insurance Benefits is AFFIRMED. The clerk of court is directed to enter judgment for the defendant and close this case.

Entered this 25th day of September, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge